RECORD NO. 14-4108

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

EZEKIEL ELIJAH WILLIAMS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT CHARLOTTESVILLE

**OPENING BRIEF OF APPELLANT
EZEKIEL ELIJAH WILLIAMS**

Rena G. Berry
RENA G. BERRY, ATTORNEY
30 East Clay Street, Suite 101
Salem, Virginia 24153
(540) 375-9358
renaberryesquire@aol.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ................................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................................ 2

STATEMENT OF THE CASE ..................................................................... 2

STATEMENT OF FACTS ........................................................................... 3

SUMMARY OF THE ARGUMENT ............................................................ 5

ARGUMENT ............................................................................................... 6

  I.  WHETHER THE SENTENCING GUIDELINES WERE
     INCORRECTLY CALCULATED AND THE PETITIONER'S
     SENTENCE WAS UNREASONABLE ............................................... 6

  II.  WHETHER THE DISTRICT COURT ERRED IN DETERMINING
     PETITIONER'S CRIMINAL HISTORY FOR THE SENTENCING
     GUIDELINES ....................................................................................... 9

CONCLUSION .......................................................................................... 16

REQUEST FOR ORAL ARGUMENT ...................................................... 17

CERTIFICATE OF COMPLIANCE ......................................................... 17

CERTIFICATE OF FILING AND SERVICE .......................................... 18

ADDENDUM ............................................................................................ 19

# TABLE OF AUTHORITIES

## CASES

United States v. Crudup,
    461 F.3d 433 (4th Cir. 2006) ........................................................6, 9

United States v. Daughtrey
    874 F. 2d 213 (4th Cir 1989)...................................................9

United States v. Dawkins
    202 F. 3d 711 (4th Cir. 2000).................................................9

United States v. Elmore,
    108 F.3d 23 (3d Cir.1997).....................................................12

United States v. Green,
    436 F. 3d 449 (4th Cir. 2006) ........................................6, 7, 9

United States v. Harris,
    128 F.3d 850 (4th Cir. 2004) ................................................12

United States v. Martinez-Santos,
    184 F.3d 196 (2d Cir.1999)...................................................12

United States v. Tigney,
    367 F.3d 200 (4th Cir. 2004) .........................................11, 12, 13

## FEDERAL STATUTES

18 U.S.C. § 401 ..........................................................................12, 13

18 U.S.C. § 3231 ........................................................................ 1

18 U.S.C. § 3742........................................................................2, 15

21 U.S.C. § 841 ................................................................................2

21 U.S.C. § 846 ................................................................................2

26 U.S.C. § 5845 ..............................................................................7

28 U.S.C. § 1291 ............................................................................. 2

## UNITED STATES SENTENCING GUIDELINES

2006 U.S.S.G. § 4A1.1 ...................................................................14

2006 U.S.S.G. § 4A1.2 ...................................................................14

2006 U.S.S.G. § 4A1.2(c)(1) .........................................11, 12, 13, 14

2013 U.S.S.G. § 4B1.2(a) .................................................................8

2013 U.S.S.G. § 7B1.1(a) .........................................................6, 7, 8

2013 U.S.S.G. § 7B1.4 .............................................................10, 15

## STATE STATUTES

Virginia Code § 18.2-11 .................................................................14

Virginia Code § 19.2-128 ...............................................................14

West Virginia Code § 62-1-5a ........................................................14

_____

UNITED STATES OF AMERICA

Appellee

v.

EZEKIEL ELIJAH WILLIAMS

Appellant

_____

ON APPEAL TO THE UNITED STATES
COURT OF APPEALS FOR THE FOURTH CIRCUIT

_____

The Appellant, Ezekiel Elijah Williams appeals to the United States Court of Appeals for the Fourth Circuit the sentence from the United States District Court for the Western District Court of Virginia entered in this case on January 30, 2014.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from a sentencing order in a criminal case in the United States District Court for the Western District of Virginia. The United States District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. All of the charged offenses were alleged to have occurred in the Western District of Virginia.

The United States District Court entered a final judgment on January 30, 2014, disposing of all criminal matters relating to this charge. The defendant filed a Notice of Appeal on February 3, 2014. This Court has general appellate jurisdiction under 28

1

U.S.C. § 1291, and jurisdiction over sentencing pursuant to 18 U.S.C. § 3742(a).

## ISSUES PRESENTED FOR REVIEW

I.    WHETHER THE SENTENCING GUIDELINES WERE INCORRECTLY CALCULATED AND THE PETITIONER'S SENTENCE WAS UNREASONABLE?

II.   WHETHER THE DISTRICT COURT ERRED IN DETERMINING PETITIONER'S CRIMINAL HISTORY FOR THE SENTENCING GUIDELINES?

## STATEMENT OF THE CASE

On August 2, 2006, the United States filed a nine count Indictment against five people, including Ezekiel Elijah Williams. The indictment alleged in Count One that from on or after January 1, 1997 until August 2, 2006, Ezekiel Elijah Williams and others conspired to knowingly and intentionally distribute and possess with the intent to distribute 50 grams or more of a substance containing a detectable amount of cocaine base ("crack") in violation of 21 U.S.C. §§ 841 (a), and 846.

Mr. Williams entered into a plea agreement with the United States wherein he pleaded guilty to Count One of the Indictment and the two other counts, alleging distribution pertaining to Mr. Williams, Counts Eight and Nine, were dismissed. Mr. Williams signed the plea agreement on November 6, 2006 and judgment was entered on February 20, 2007. Mr. Williams was sentenced to 80 months in prison and five

2

years of supervised release. Mr. Williams' sentence was later reduced to 64 months after the United States Sentencing Guidelines were amended.  Mr. Williams was released to supervision on April 22, 2011.

On June 26, 2012, a Supervised Release Violation Report was completed in regards to Mr. Williams alleging that Mr. Williams had violated several conditions of his release with a Violation Grade of B.  A Supplemental Information alleging additional violations was submitted on January 2, 2014.  On January 30, 2014, Mr. Williams admitted that he had violated several conditions of his supervised release and the Court found that he had committed a Grade B violation with a Criminal History Category of IV. (Appx. 69) Mr. Williams was sentenced to imprisonment for a total term of 37 months. (Appx. 70)

## STATEMENT OF THE FACTS

On February 20, 2007, Mr. Williams pleaded guilty to conspiring to knowingly and intentionally distribute and possess with the intent to distribute 50 grams or more of crack. He was released to supervision for five years on April 22, 2011.  On June 26, 2012, a Supervised Release Violation Report was completed stating that Mr. Williams violated the mandatory condition that the defendant shall not commit another federal, state, or local crime by driving on a suspended operator's license and that he was convicted of destruction of property and given 9 months incarceration, with 8 months

3

suspended. (Appx. 58) Additionally, the report stated that Mr. Williams was arrested on June 3, 2012, for contributing to the delinquency of a minor and that he was arrested for carnal knowledge of a 13-14 year old on June 8, 2012. (Appx. 58) The charge for contributing to the delinquency of a minor was subsequently dismissed on July 9, 2012 and the charge of carnal knowledge of a 13-14 year old was nolle prossed on April 2, 2013. (Appx. 62) On April 2, 2013, Mr. Williams pled guilty to Perjury and sentenced to 10 years of incarceration, with eight years, six months suspended and eight years of supervised probation. (Appx. 62)

The Supervised Release Violation Report also stated that Mr. Williams had violated the conditions of his supervised release by testing positive for marijuana on September 13, 2011 and October 13, 2011. (Appx. 59) He also admitted to using an illegal substance on June 6, 2012. (Appx. 59) The report alleged that Mr. Williams did not provide information as it relates to his residence or submitted monthly reports to his probation officer for September through December 2011 and January and May 2012, violating other conditions of his supervised release. (Appx. 59) The report also alleged that Mr. Williams violated the conditions of his supervised release by failing to participate in a program of testing and treatment for substance abuse as he had not entered a substance abuse program as of June 15, 2012. (Appx. 60)

Finally, the report alleged that Mr. Williams violated the conditions of his

supervised release by not following the instructions of his probation officer. (Appx. 60)  Mr. Williams was instructed to have no further contact with Terry Rivers, a female with whom he was in a relationship, but continued to do so.  The report also alleged that Mr. Williams was instructed to have no relationships with minor females, but that Mr. Williams violated this condition by having an ongoing relationship with a 13 year old. (Appx. 60)

On January 30, 2014, the District Court found Mr. Williams had committed a Grade B violation, with a Criminal History Category of IV and revoked his supervised release. (Appx. 69)  During the hearing, the applicable sentencing guidelines range was stated as 37 months to 46 months imprisonment, which was consistent with the sentencing guidelines range stated in the Supervised Release Violation Report. (Appx. 65, Appx. 61)  The Court, after stating that the Court had considered the applicable guidelines issued by the Sentencing Commission, sentenced Mr. Williams to a term of imprisonment of 37 months. (Appx. 70)

## SUMMARY OF ARGUMENT

I.     Mr. William's sentence was imposed as a result of an incorrect application of the sentencing guidelines as the sentencing range was incorrectly calculated.  Mr. Williams' sentence is therefore unreasonable and should be vacated.

II.    Mr. William's sentence was imposed as a result of an incorrect application of the sentencing guidelines as his Criminal History Category was incorrectly calculated.  Mr. Williams' sentence is therefore unreasonable and should be vacated.

5

# **ARGUMENT**

I.    **Whether the District Court erred in applying a sentencing guideline range that was incorrectly calculated.**

The standard of review for the district court's factual findings at sentencing is clear error, but where the question is purely legal the standard of review is *de novo*. United States v. Green, 436 F. 3d 449, 456 (4th Cir. 2006). A sentence imposed after a revocation of supervised release will be upheld unless that sentence is plainly unreasonable. *See* United States v. Crudup, 461 F.3d 433, 439-40 (4th Cir. 2006).

The June 26, 2012, Supervised Release Violation Report alleged that Mr. Williams had committed a Grade B violation with a Criminal History Category of IV and that the applicable United States Sentencing Guideline range was 37 to 46 months pursuant to U.S.S.G. § 7B1.4(a). (Appx. 60-61). The sentencing guideline range was also stated as 37 to 46 months in Mr. Williams' supervised release revocation hearing and the Court sentenced Mr. Williams to 37 months imprisonment after stating that the applicable guideline was consulted. (Appx. 65, 70) However, under the 2013 United States Sentencing Guidelines (effective November 1, 2012), the applicable sentencing guideline range for a Grade B violation with a Criminal History Category of IV is 12 to 18 months. (2013 U.S.S.G. § 7B1.4(a). A sentencing guideline range of 37 to 46 months is applicable to a Grade A violation with a Criminal History Category

6

of IV, where the defendant was on probation or supervised release for a Class A felony. (2013 U.S.S.G. § 7B1.4(a))

18 U.S.C. § 3742(f)(1) provides that if the Court of Appeals determines that "the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate." Though a sentence falling outside of the sentencing guideline range is not inherently unreasonable, "if that sentence is based on an error in construing or applying the Guidelines, it will be found unreasonable and vacated." United States v. Green, 436 F. 3d 449, 457 (4th Cir. 2006). While Mr. Williams was on supervised release for a class A felony, he was found guilty of a Grade B violation, not a Grade A violation and therefore the sentencing guideline range of 37 months to 46 months was incorrectly applied to Mr. Williams. (Appx. 69)

Additionally, the 2013 United States Sentencing Guidelines defines a "Grade A violation" as:

> conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other

7

federal, state, or local offense punishable by a term of imprisonment exceeding twenty years. (2013 U.S.S.G. § 7B1.1(a)(1))

2013 United States Sentencing Guideline § 4B1.2(a) defines a "crime of violence" as: any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. (U.S.S.G. § 4B1.2(a))

The Court found Mr. Williams guilty of five violations of the conditions of his supervised release: 1) driving on a suspended operator's license, being convicted of destruction of property, and pleading guilty to perjury; 2) his whereabouts were unknown repeatedly from June, 2011 until January, 2012; 3) testing positive for marijuana on several occasions; 4) not submitting monthly reports for September through December 2011, and January and May, 2012; and 5) repeatedly failing to contact his probation officer as instructed, continuing to have contact with persons against the instructions of his probation officer, and failing to report to a substance abuse program as directed by his probation officer. (Appx. 72-73)  None of the

violations of the supervised release conditions that Mr. Williams' was found to have committed rose to the level of a Grade A violation. The conduct that Mr. Williams was found to have committed does not meet the definition of "crimes of violence" nor were any of the offenses punishable by a term of imprisonment exceeding 20 years.

As Mr. Williams was found to have committed a Grade B violation with a Criminal History Category of IV, his sentencing guideline range was 12 to 18 months imprisonment and not 37 to 46 months imprisonment. The District Court's sentence of 37 months is therefore plainly unreasonable as it was based on an error in applying the sentencing guidelines as the sentencing guideline range used during the Supervised Release Revocation Hearing was incorrect. (Appx. 65)

## II.    **Whether the District Court erred in applying a Criminal History Category that was incorrectly calculated.**

The standard of review for the district court's factual findings at sentencing is clear error. United States v. Dawkins, 202 F. 3d 711, 714 (4th Cir. 2000); United States v. Daughtrey, 874 F. 2d 213, 217 (4th Cir. 1989). However, where the question is purely legal the standard of review is *de novo*. United States v. Green, 436 F. 3d 449, 456 (4th Cir. 2006). A sentence imposed after a revocation of supervised release will be upheld unless that sentence is plainly unreasonable. *See* United States v. Crudup, 461 F.3d 433, 439-40 (4th Cir. 2006).

9

In determining the applicable sentence guideline range for a revocation of probation or supervised release, the Criminal History Category is the category applicable at the time the defendant was originally sentenced to a term of supervision. (2013 U.S.S.G. § 7B1.4)  At the time that Mr. Williams was sentenced to supervised release, February 20, 2007, his Criminal History Category was determined to be IV with a total of 9 criminal history points. (Appx. 85)  The Criminal History Category was determined using the 2006 Federal Sentencing Guidelines Manual, effective November 1, 2006.  Mr. Williams prior convictions consist of one count of first degree robbery, a count of displaying a firearm, two counts of robbery in the second degree, and two counts of criminal possession of a weapon on August 11, 1993 for which he was sentenced to one year of incarceration on one count of criminal possession of a weapon and four to 12 years of incarceration on the other five counts for three criminal history points. (Appx. 83)  On November 3, 2001, Mr. Williams was convicted of possession of marijuana and sentenced to five days of incarceration for one criminal history point. (Appx. 84)  Mr. Williams also received one criminal history point for convictions of battery and resisting arrest on June 19, 2002, for which he received a fine. (Appx. 70)

However, Mr. Williams also received a criminal history point for a conviction for driving on a suspended operator's license, for which he was sentenced to a

10

suspended sentence of 30 days on condition of two years good behavior. (Appx. 70) The 2006 edition of the Federal Sentencing Guidelines Manual, the subsection "Sentences Counted and Excluded," under the "Definitions and Instructions for Computing Criminal History," excludes driving with a suspended license from sentences to be counted unless the defendant received a sentence of at least 30 days of imprisonment, a term of probation of at least a year or the prior offense was similar to the instant offense. (2006 U.S.S.G. § 4A1.2(c)(1)) As Mr. Williams received a suspended sentence for the offense that was never imposed, he should not have received a criminal history point for the sentence.

Additionally, Mr. Williams received a criminal history point for a conviction for failure to appear relating to the charge for driving on a suspended operator's license. (Appx. 71) Mr. Williams received a suspended sentence of 10 days in jail on condition of two years good behavior. (Appx. 71) In United States v. Tigney, 367 F.3d 200 (4th Cir. 2004), the Court of Appeals held that the West Virginia offense of failure to appear was similar to contempt of court and should have been excluded from the defendant's criminal history pursuant to U.S.S.G. § 4A1.2(c)(1). Under the 2006 Federal Sentencing Guidelines Manual, fifteen listed offenses, "and offenses similar to them, by whatever name they are known," are excluded from calculation if the sentence imposed was less than one year probation or thirty days imprisonment, and

11

the prior offense was not similar to the instant offense. (2006 U.S.S.G. § 4A1.2(c)(1))

In determining whether the West Virginia offense of failure to appear was similar to contempt of court, the Court of Appeals applied an elements test comparing the elements of the offense of failure to appear to the offense of contempt of court to determine whether they are "nearly corresponding" or "resembling in many respects." Id at 201-202 (4th Cir. 2004) (quoting United States v. Harris, 128 F.3d 850, 854-855 (4th Cir. 2004)) The Court adopted the approach followed by other circuits and looked to federal law to determine the elements of the offense listed in U.S.S.G. § 4A1.2(c)(1). Tigney, 367 F.3d 200 at 202; see United States v. Martinez-Santos, 184 F.3d 196, 198 (2d Cir.1999) and United States v. Elmore, 108 F.3d 23, 25 (3d Cir.1997).

The federal criminal contempt statute prohibits, inter alia, "[d]isobedience or resistance to lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401; Tigney, 367 F.3d 200 at 202. The Court of Appeals found in Tigney that the elements of "contempt of court" were (1) disobedience (2) of a lawful official court order. Tigney, 367 F.3d 200 at 202. The Court of Appeals found that the West Virginia offense similarly required disobedience of a lawful official order and that, while the offense of failure to appear was more narrow than that of contempt of court, the elements of failure to appear resembled in many respects or nearly correspond to the

12

elements of contempt of court.  Id.  In looking at the respective punishments of the offenses, the Court also noted that contempt of court and the West Virginia offense of failure to appear had the same punishment, with both leaving discretion with the court to fix the penalty. Id at 203-204.  For those reasons, the Court in Tigney found that failure to appear under West Virginia law was similar to contempt of court, and fell within the misdemeanor exception under U.S.S.G. § 4A1.2(c)(1). Id at 204.

Virginia Code § 19.2-128 sets forth the crime of failure to appear in the Commonwealth of Virginia.  Like both the federal offense of contempt of court and the West Virginia offense of failure to appear, the Virginia offense of failure to appear requires disobedience of a lawful official order by criminalizing the willful "failure to appear before any court or judicial officer as required." Va. Code § 19.2-128; See 18 U.S.C. § 401 and W. Va. Code § 62-1-5a.  Additionally, the Virginia offense of failure to appear also leaves the punishment in the discretion of the court as failure to appear for a misdemeanor offense; such as the offense Mr. Williams was charged with - Driving with a Suspended Operator's License, was punishable as a class 1 misdemeanor. Va. Code § 19.2-128.  Virginia Code § 18.2-11 provides that a class 1 misdemeanor is punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Va. Code § 18.2-11 (emphasis added).  As both the elements of the offenses and the punishments of the Virginia

13

offense of failure to appear and the federal offense of contempt of court are similar, the Virginia offense of failure to appear should have been excluded under the misdemeanor exception set forth in 2006 U.S.S.G. § 4A1.2(c)(1) and Mr. Williams should not have received a criminal history point for the sentence.

Mr. Williams also received two criminal history points for failing to be on good behavior at the time of the drug conspiracy offense on the convictions of Driving on a Suspended Operator's License and Failure to Appear. (Appx. 85) While failing to be of good behavior could be considered a "criminal justice sentence" as it has a supervisory component, in the instant case, as the offenses generating the sentence of good behavior are not countable, the term of good behavior should not have been considered a "criminal justice sentence" in calculating Mr. Williams' sentencing guidelines. (2006 U.S.S.G. § 4A1.1, appl. n.4 (stating that "a "criminal justice sentence" means a sentence countable under §4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component, although active supervision is not required for this item to apply.")) Mr. Williams total criminal history points should not have included the two points for being under a "criminal justice sentence" at the time of the drug conspiracy offense. As four criminal history points were attributed to Mr. Williams in error, he should have had a total of five criminal history points instead of nine and his Criminal History Category

14

should have been determined to be III instead of IV. There is an application note to section 7B1.4 of the 2012 Federal Sentencing Guidelines Manual stating that the criminal history category used to determine the range of imprisonment for a revocation is to be the criminal history category determined at the original sentencing and is not to be recalculated. The application note goes on to say that this is because the table has "been designed to take into account that the defendant violated supervision". (2012 U.S.S.G. § 7B1.4 appl. n. 1). However, this application note does not address the instant case, where the criminal history category was originally calculated in error. As the criminal history category was inaccurate and used to determine the current sentence for Mr. Williams' revocation, Mr. Williams' sentence was imposed as a result of an incorrect application of then sentencing guidelines.

With a Criminal History Category of III, a Grade B violation results in a sentencing guideline range for the revocation of Mr. Williams' supervised release of 8 to 14 months under the 2013 Federal Sentencing Guidelines Manual and not 37 to 46 months imprisonment. (2013 U.S.S.G. § 7B1.4(a)) The District Court's sentence of 37 months is therefore plainly unreasonable as it was based on an error in applying the sentencing guidelines because the Criminal History Category used during the Supervised Release Revocation Hearing was incorrectly calculated. Under 18 U.S.C. § 3742(f), as Mr. Williams sentence was imposed as a result of an incorrect

15

application of the sentencing guidelines, his case should be remanded for further sentencing proceedings.

## **CONCLUSION**

Given that Mr. Williams' sentence was imposed as a result of an incorrect application of the sentencing guidelines, the Defense respectfully asks that Mr. Williams' sentence be vacated.

Respectfully submitted,

EZEKIEL ELIJAH WILLIAMS
By Counsel

/s/  Rena G. Berry
Rena G. Berry, Esquire VSB 31900
Attorney for Appellant
30 E. Clay Street, Suite 101
Salem, VA  24153
(540) 375-9358
(540)375-9350
RBerry2258@aol.com

16

## **REQUEST FOR ORAL ARGUMENT**

This case presents matters of compelling interest and terminally affect the defendant's Constitutional rights as outlined, therefore Counsel for Ezekiel Elijah Williams requests oral argument.

## **CERTIFICATE OF COMPLIANCE**

This brief contains 17 pages and approximately 3,569 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(ii), and is in compliance with Fed. R. App. P. 32(a)(7)(B).

This brief was prepared in a proportionally spaced typeface using Microsoft Word in 14 point Type Space, Times New Roman font, and is in compliance with Fed. R. App. R. P. 32(a)(7)(B).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the Brief and/or a copy of the word or line print-out.

/s/ Rena G. Berry
Rena G. Berry, Esquire, VSB 31900
*Counsel for Appellant*

17

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I certify that on June 27, 2014, the foregoing Opening Brief of Appellant was filed with the Clerk of the Court via hand delivery and electronically using the Court's CM/ECF System, which will send notice, and constitute service, of such filing to the following registered CM/ECF user:

> Ronald M. Huber
> OFFICE OF THE UNITED STATES ATTORNEY
> 255 West Main Street, Suite 104
> Charlottesville, Virginia 22902
> Ron.Huber@usdoj.gov
>
> Counsel for Appellee

> /s/ Rena G. Berry
> Rena G. Berry, Esquire, VSB 31900
> *Counsel for Appellant*

18

# ADDENDUM

## **ADDENDUM**

Title 18, United States Code, Sub-section 401, "Power of court":

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Virginia Code Section 19.2-128, "Penalties for failure to appear":

A. Whoever, having been released pursuant to this chapter or § 19.2-319 or on a summons pursuant to § 19.2-73 or § 19.2-74, willfully fails to appear before any court or judicial officer as required, shall, after notice to all interested parties, incur a forfeiture of any security which may have been given or pledged for his release, unless one of the parties can show good cause for excusing the absence, or unless the court, in its sound discretion, shall determine that neither the interests of justice nor the power of the court to conduct orderly proceedings will be served by such forfeiture.

B. Any person (i) charged with a felony offense or (ii) convicted of a felony offense and execution of sentence is suspended pursuant to § 19.2-319 who willfully fails to appear before any court as required shall be guilty of a Class 6 felony.

C. Any person (i) charged with a misdemeanor offense or (ii) convicted of a misdemeanor offense and execution of sentence is suspended pursuant to § 19.2-319 who willfully fails to appear before any court as required shall be guilty of a Class 1 misdemeanor.

Virginia Code Section 18.2-11, "Punishment for conviction of misdemeanor":

The authorized punishments for conviction of a misdemeanor are:

(a) For Class 1 misdemeanors, confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both.

(b) For Class 2 misdemeanors, confinement in jail for not more than six months and a fine of not more than $1,000, either or both.

(c) For Class 3 misdemeanors, a fine of not more than $500.

(d) For Class 4 misdemeanors, a fine of not more than $250.

For a misdemeanor offense prohibiting proximity to children as described in subsection A of § 18.2-370.2, the sentencing court is authorized to impose the punishment set forth in subsection B of that section in addition to any other penalty provided by law.

West Virginia Section 62-1-5a, "Citation in lieu of arrest; failure to appear":

A law-enforcement officer may issue a citation instead of making an arrest for the following offenses, if there are reasonable grounds to believe that the person being cited will appear to answer the charge:

(1) Any misdemeanor, not involving injury to the person, committed in a law-enforcement officer's presence: Provided, That the officer may arrest the person if he has reasonable grounds to believe that the person is likely to cause serious harm to himself or others; and

(2) When any person is being detained for the purpose of investigating whether such person has committed or attempted to commit shoplifting, pursuant to section four, article three-a, chapter sixty-one of this code.

The citation shall provide that the defendant shall appear within a designated time.

21

If the defendant fails to appear in response to the citation or if there are reasonable grounds to believe that he will not appear, a complaint may be made and a warrant shall issue. When a physical arrest is made and a citation is issued in relation to the same offense the officer shall mark on the citation, in the place specified for court appearance date, the word "arrested" in lieu of the date of court appearance.